By the Court—Sedgwick, J.
The plaintiff took judgment against the defendant on October 11th, 1871. Execution upon it was issued to the sheriff, who levied upon personal property belonging to the defendants.
On November 21st, 1871, he sold the property under the levy, and received the proceeds of the sale. On the 29th of the same month the sheriff was served with an injunction issued by the United States District Court in bankruptcy for this district, in a proceeding to adjudicate the defendants to be bankrupts.
This injunction commanded the sheriff to desist and refrain from making any transfer or disposition of any of the property of the defendants.
The injunction recites the filing of the petition to have the defendants adjudicated involuntary bankrupts, etc.
After the service of this injunction, the plaintiffs, upon notice of motion, obtained at the Special Term an order that the sheriff pay over to them the money held by him under the execution. The sheriff resisted the motion, by presenting the fact of the service of the injunction upon him.
The present appeal is taken from this order.
The courts heretofore, when the sheriff was virtually a stakeholder of money for contesting parties, and was without fault, have refused to compel him to decide the controversy between those parties, at his own personal risk.
*364 The rule is stated in 2 Tidd’s Pr., 4th Am. Ed. p. 1017: “If the property "be disputed (which frequently happens on a commission of bankruptcy, etc.), the court, on the suggestion of a reasonable doubt, will protect the sheriff by enlarging the time for making his return, till the right be tried between the contending parties, or one of them has given him a sufficient indemnity. The rule for this purpose is a rule to show cause. And the Court of King’s Bench, upon the application of the sheriff, enlarged the time for his making a return to a writ of fieri facias, upon suggestion of a reasonable doubt, whether the goods seized under the writ were not bound by an extent, afterwards issued at the suit of the crown for malt duties, for the purpose of inducing the plaintiff to go into the Court of Exchequer, and there contest the question of right with the crown, in a more eligible manner than in this court. So where it appeared by affidavit that writs of extent and fieri facias had been issued on the same day, the Court of King’s Bench, for protecting the sheriff, refused to allow a venditioni exponas, to be issued on the return of the fieri facias to compel Mm to sell the goods under it.
So, where a bankrupt brought an action, and his assignees another, against the sheriff, the court allowed the latter to pay the money levied into court, and stayed the proceedings until the trial of an issue between the bankrupt and his assignees. And in general, when an action is brought against the sheriff, by assignees of a bankrupt, for taking goods in execution after a bankruptcy, the courts will assist the sheriff by staying the proceedings until he is indemnified on proper and equitable terms, and the terms imposed by the Court of King’s Bench in a late case were, the sheriff paying over the money levied to the assignees, with the costs of the action up to that time, being allowed Ms poundage and expenses incurred in the execution.
In Bernasconi v. Farrbrother, 7 B. & Co. p. 381 (1827), *365 Lord Tenterden said: “The court will give the sheriff all the protection due to a public officer, when he acts bona fide within the scope of his duty; and as between the' sheriff, a judgment creditor, and the assignees of a bankrupt, it will always take care that the sheriff shall not be made an instrument of trying, at his own expense, the validity of a commission. In such case the court has been always ready to interfere, when the sheriff has come promptly, and has acted in the straight course of his duty indifferently and equally between the parties, and to administer to the sheriff all the equity which a court of equity could give him upon a bill of inter-pleader, and this has been done uniformly upon motion.”
The principle involved in these rules was specifically recognized in Shaw v. Chester, 2 Edwards Ch. R. p. 407.
This case last cited was affirmed (8 Page, Ch. R. p. 338).
The main proposition decided by it was, that as a general rule the sheriff could not sustain a bill of inter-pleader against contending claimants of property seized by him under execution. Several reasons were given for the conclusion; among them were :
1st. It would appear by such a bill that the complainant had been guilty of a tort against' one or another of the adverse claimants.
2d. The sheriff could get from the court whose process he had executed, all the relief the case called for.
3. The sheriff did not need the protection of a court of equity, because the law gave him a right to indemnity in proper cases.
This case further admits, p. 409, that there may exist a condition of facts which justified the filing by a sheriff of a bill of interpleader. Such a bill is allowed when it is brought for the determination of equitable rights, as set up by the claimants (2 Daniels, Ch. Pr. 1566).
*366 It thus appears that in a proper proceeding the sheriff will receive due protection, and is not obliged to pro • ceed at his own risk, under all circumstances, to obey the letter of the process which it is his duty to execute. The court will look at the circumstances, and make the order proper to the particular facts presented. On this appeal, however, the single Question is, should the court below have made the unconditional order appealed from that the sheriff pay over the money ? -
The sheriff urges that he should not be compelled by order to pay over, because he is bound by law to obey the injunction, which would be violated if he paid over the money, and because such a payment by him would subject him to punishment as for a contempt of the district court in bankruptcy.
The injunction was issued by the court in bankruptcy under the 40th' section of the bankrupt law. The power to grant such process is a beneficial and almost neces.sary part of a bankruptcy system. ' The other powers of the bankruptcy court over an estate would accomplish little in dividing the estate among creditors, if the court did not gain the power to preserve it from dispersion or illegal transfer as soon as the proceeding in bankruptcy began. As it is issued by a court of competent jurisdiction, that court can alone determine finally what constitutes a violation of it. Nor if the court here come to the conclusion that payment by the sheriff to the plaintiffs under this order would protect him from punishment in the district court, would such a conclusion bind this latter court.
It must proceed according to its own views of the law.
Further, if this court can not legally and judicially determine what is or what is not a violation of the injunction, and yet sees that the question here arises as to whether payment by the sheriff is not a violation, it will not proceed to adjudicate upon the question either *367 for or against the sheriff, but will leave that for the court having the jurisdiction.
The only inconvenience or harm in such a course is, that for a time the law will refuse definitely to decide to whom the money belongs. There must, under any system of bankruptcy, be a time when the enjoyment of the rights of the general body of creditors is postponed, •and when it is impossible to proceed at once to ascertain the claims against and in favor of the estate. The law says that upon an adjudication that a person is a bankrupt, his estate belongs to his creditors. They, however, at the time of the adjudication are not in possession of the estate, nor is any one in their behalf. Time must elapse before an assignee can be appointed to take possession. Before the adjudication in involuntary cases, while the preliminary proceedings are pending, all matters must be considered in view of the possibility that an assignee will be appointed. It would not be just that in the meantime an individual creditor should proceed in his own interest, while the law leaves, without a representative to oppose him, the general body of creditors. Whatever his rights may, in the end, appear to be, it would be inexpedient and unjust to suffer him to obtain them primarily, according to what he may represent them to be. Nominally he acts against the bankrupt. Really, however, the party in interest' against him are the bankrupt creditors.
Formerly, under the English bankruptcy law, a sheriff that took, under legal process, property belonging to a man who had committed an act of bankruptcy, became liable to the assignee in bankruptcy afterwards appointed, though at the time of the taking the sheriff had no notice that the act of bankruptcy had been committed, and the commission had not issued (Cooper v. Chitty, 1 Smith Leading Cases, p. 562). We have prevented, in part, the hardship of such a liability to a sheriff, by giving the court power to issue an injunction *368 which gives him notice of the true state of the case, and is a proper answer in his mouth when he is called upon to execute process against the estate affected "by the "bankruptcy proceedings.
The Supreme Court, Ex parte Fleming, 4 Hill, p, 581 refused to compel, by mandamus, a ministerial officer to do a certain act, because he had been forbidden to do it by an injunction issued by the United States District Court.
The position taken by plaintiffs’ counsel is, that the injunction forbids the transfer of the defendants’ property, but that the money in the sheriff’s hands never was the defendants’ property; and therefore that the injunction does not apply to such money.
Necessarily the injunction, and the part of the statute providing for it, referred to what in view of the bankrupt act might, be the property of the debtors. Under the act the assignee may recover property of the bankrupts taken or procured, or suffered to be taken, by legal process, while he is insolvent, and with intent to take and give a preference.
The present plaintiff has recovered judgment against, and taken property of the defendants, and clearly is of that class of persons against whom recovery may be had in proper cases. If the sheriff still had in hand the property levied on, there can be no doubt that this injunction referred to it.
The mere fact that the property has been turned into money, does not prevent it still remaining the debtor’s property under the bankrupt act. That act administers equitable as well as legal principles.
Now assuming the question to arise, we can see that for any proper and equitable purpose equity would consider the proceeds of the goods as having the same quality and legal relation as the goods themselves; certainly if there were a case where a man, to defeat the operation of the bankrupt act, combined with one of his *369 creditors to dispose fraudulently, by color of legal proceedings, of Ms property, at all stages of the combination, the legal title of the property as between him and his other creditors would remain in him. It is not necessary to say, that the court does not suggest that such is the present case. We mean to go only so far as to see, if under this injunction there is a question as to whether the money in the sheriff’s hands may not be, in the meaning of the bankrupt act, the property of the debtors. We think it may be, and that the injunction forbidding its transfer should be obeyed. We have come to the conclusion that in such a case an order absolutely commanding the payment of the money by the sheriff should be reversed.
Freedman, J., concurred.